IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1997 SESSION

FILED

March 27, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 03C01-9605-CR-00201 |
| | ) | |
| Appellee, | ) | HAMILTON COUNTY |
| | ) | |
| VS. | ) | **HON. DOUGLAS A. MEYER, JUDGE** |
| | ) | |
| RICKY LEBRON HUFF, | ) | (Aggravated Robbery) |
| | ) | |
| Appellant. | ) | |

FOR THE APPELLANT:

**DONNA R. MILLER**
Office of the Public Defender
Suite 300, 701 Cherry Street
Chattanooga, TN 37402

For Appeal Only:
**RANDALL E. REAGAN**
602 Gay Street, Suite 905
Knoxville, TN 37902

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**GARY D. GERBITZ**
District Attorney General

**LELAND DAVIS**
Assistant District Attorney General
City-County Courts Building
Chattanooga, TN 37402

**OPINION FILED:** _____

**AFFIRMED**

**CHRIS CRAFT,**
**SPECIAL JUDGE**

**O P I N I O N**

The defendant, Ricky Lebron Huff, appeals as of right from a jury conviction for aggravated robbery. Huff presents two issues for our review:

(1) whether the evidence is sufficient to support the verdict of the jury; and

(2) whether the trial court erred in sentencing the defendant to 25 years as a Range III, Persistent Offender.

After considering the proof offered at the trial and the sentencing hearing, we affirm the judgment of the trial court.

## SUFFICIENCY OF THE EVIDENCE

Appellant was originally indicted for both Aggravated Robbery and Aggravated Rape. Although the jury convicted appellant of Aggravated Robbery, it could not reach a verdict as to the Aggravated Rape indictment, which was later nolle prosequied by the State. Appellant alleges that the evidence presented at trial is insufficient as a matter of law to sustain the remaining conviction.

The victim testified at trial that on April 9, 1994, she had arranged to meet a friend, Zandra McElvain, at Club Doe Doe's, a local Chattanooga nightclub. After arriving and finding the parking lot full, she parked around the corner at a local bail bond company, near a pay phone, where she intended to call her friend and confirm their plans. Appellant appeared to be using the phone, however, and when he hung up, he approached her car and asked her if she would drive him around to look for his car, which a friend had borrowed and failed to return. She agreed to help him, and they drove around for a while, but were unsuccessful in locating his car. They then returned to Club Doe Doe's, where she waited for her friend for a half hour with appellant. When she grew tired and decided to go home, appellant asked if she would give him a ride to his home. On the way to appellant's house, he asked her to pull over so he could talk to his cousin, and she complied. After about four minutes, she became concerned when another male and two females, apparently companions of appellant's cousin, walked around behind her car, as if to block her in. Appellant then asked her to give his cousin a ride also, which she agreed to, thinking that after letting them both out she would then be free to go home. When appellant directed her to go

2

through a tunnel, she became scared, thinking no one lived on the other side. She considered getting out and running at that point, but seeing no place she could run to, she continued on through the tunnel and was directed to pull over at a house that was boarded up. As soon as she stopped, appellant's cousin grabbed her by the hair and put a knife to her neck. Appellant then said "Okay, bitch, give me your money," and took thirty dollars from her, a nugget ring, and a necklace she had hanging on her rearview mirror. He struck her several times, obtained the keys to her car, and recovered her purse from the trunk. When she started to scream, he told his cousin, "When I tell you, stick the bitch." After getting back in the car, appellant drove to some railroad tracks, walked her down the tracks and had sex with her against her will, while his cousin stayed at the car as a lookout. All three of them then got back in the car, with appellant driving and his cousin holding the knife to her neck. When they slowed to turn a corner, the victim jumped from the car, ran to the nearest house and called the police.

A Chattanooga police officer testified that the victim described appellant in detail to her, including a description of a tattoo of "Lois" he had on his chest, and said his first name was "Ricky." The officer then interviewed Zandra McElvaine, who verified that she was to have met the victim at Club Doe Doe's, but that she never appeared, deciding to go to sleep instead. Upon hearing the description of the robber, she gave the officer appellant's name as a possible suspect. When the officer obtained his photo and showed the victim a photo lineup, she identified appellant as the one who robbed and raped her.

A gynecologist testified that he examined the victim the morning the incident was reported, and that although there was no trauma to her genital region, her injuries were consistent with her history of the offense. She had scrapes on her nose and chin, bruising on the front of her throat, and a cut on her shoulder consistent with someone placing a knife blade against the shoulder. DNA taken from sperm found in her rape kit matched appellant's DNA. A stipulation was then entered that appellant had sex with the victim the day of the offense.

A Georgia State Trooper testified that the day after the victim had been robbed,

3

he arrested appellant in Georgia after appellant had driven a car off the road into a ditch while intoxicated. Appellant had at first given him two false names and dates of birth and told him he had borrowed the car from some of his relatives. The trooper later discovered the car appellant had been driving and had wrecked was the car taken from the victim the day before, that had been reported stolen in Chattanooga. Appellant's defense centered on the theory that the victim was a "skeezer," a female who offers sexual services in exchange for crack cocaine, or "pawns" her car for crack, and that therefore the sex with appellant and the taking of her car by him were consensual. To this end the defense called two police officers who testified that the victim mentioned nothing about the rape until they had interviewed her for about an hour, and that many cars reported stolen in Hamilton County are really cars that are pawned for crack and never returned. Frederick Rice, an admitted crack smoker, testified that he had seen appellant with the victim the night of the offense, and appellant asked him if he knew anyone who wanted to "turn a trick." The victim then added, "or might need the car." He claimed that appellant and the victim later showed up at his house the night of the offense and gave him some crack in exchange for a "straight shooter" with which to smoke it, and proceeded to smoke crack in the alley next to his house. He also admitted smoking crack that night. Antonio Glatt, a friend of appellant, testified that appellant approached him with the victim the same night and told him that "this lady wanted to pawn her car for some drugs, and she also wanted to skeeze, exchange sex for drugs." A security guard at Club Doe Doe's testified that appellant had been barred from the club for a long time, and was not allowed inside.

When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Rule 13(e) of the Tennessee Rules of Appellate Procedure. On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

4

This Court will not reweigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

In order to convict appellant of aggravated robbery, the state must demonstrate that appellant (a) intentionally or knowingly took the property of another without consent, (b) with the intent to deprive the owner of the property, (c) by putting the victim in fear, and (d) accomplished this with a deadly weapon. Tenn. Code Ann. §§ 39-13-401 and -402; 39-14-103.

The victim testified two men robbed her at knife-point, after she had been put in fear. She identified appellant as the person who asked for and obtained her money, jewelry and car while acting in concert with another man wielding a knife. She immediately reported the robbery, and appellant was arrested the next day in another state after wrecking her car, giving false names to the police and lying about the ownership of the car and how he had obtained it. We find the evidence contained in the record is sufficient to support a finding by a rational trier of fact that the defendant was guilty of aggravated robbery beyond a reasonable doubt. This issue is without merit.

**THE SENTENCING HEARING**

The trial judge sentenced appellant to 25 years as a Range III, Persistent Offender, which appellant challenges as excessive. When an appeal challenges the

5

length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct. T. C. A. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

It is uncontested that appellant is a Range III, Persistent Offender, as he has two prior convictions in 1986 for Assault with Intent to Commit Murder First Degree, which must be classified as Class A felonies pursuant to T.C.A. § 40-35-118. The sentencing range for a Range III Class B felony is incarceration for some period of time between 20 and 30 years. T.C.A. § 40-35-112(c)(2). The trial court found four enhancement factors: (1) that he has a previous history of criminal convictions in addition to those necessary to establish the appropriate range, T.C.A. § 40-35-114(1), (2) that he was the leader in the commission of an offense involving two or more criminal actors, T.C.A. § 40-35-114(2), (3) that he has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, T.C.A. § 40-35-114(8), and (4) that he was on probation for a felony when the offense was committed, T.C.A. § 40-35-114(13). All four enhancement factors were clearly supported by evidence presented during the trial or sentencing hearing.

The State entered certified copies of the indictments and judgments of six prior convictions. In addition to the two Assault with Intent to Murder First Degree convictions, appellant has prior convictions at different times for Rape, Grand Larceny, Unlawful Carrying of a Pistol, and Possession of Cocaine. Other misdemeanor convictions were included in the presentence report. The victim's testimony at trial

6

supported the finding that the appellant was the leader in the commission of the aggravated robbery. He initiated contact with the victim, obtained the aid of another man who held the knife, ordered her to hand over her money and jewels, struck her repeatedly to get her keys and open her trunk, and drove her car away after the robbery. Proof at the sentencing hearing showed that the appellant has had his parole revoked twice, in November of 1989 and April of 1991, and that he was on probation for his Rape conviction when he committed the Aggravated Robbery.

Appellant's attorney urged the trial court to find two mitigating factors, (1) that the offense didn't cause or threaten serious bodily injury, T.C.A. § 40-35-113(1), and (2) that the crime was committed under such unusual circumstances that a sustained intent to violate the law motivated his conduct, T.C.A. § 40-35-113(11). The trial court correctly failed to find either factor from the proof. The victim was clearly threatened with serious bodily injury by appellant, who just as clearly had a sustained intent to violate the law.

The trial judge having properly found four enhancement factors and no mitigating factors, the record fully supports the sentence of 25 years given the defendant.

The judgment of the trial court is AFFIRMED.


_____
CHRIS CRAFT, SPECIAL JUDGE


CONCUR:

_____
JERRY L. SMITH, JUDGE


_____
JOE RILEY, JUDGE